0635768 Rispoli v. King County. Each side will have 15 minutes. May it please the Court, my name is Dwight Van Winkle. I'm representing Karen Rispoli. In this action, she's the plaintiff and the appellant. I want to reserve five minutes for rebuttal, relying mainly on the arguments in my brief, but I'd like to point out three issues. The partial summary judgment order of Judge Lasnik, which excluded, we see that as carving out the core of Ms. Rispoli's case, based on her alleged failure to having properly answered what are contention interrogatories defining adverse employment actions. Ms. Rispoli extensively answered wrongful acts. This was the interrogatory number one. She extensively answered those interrogatories, pointing out a long series in great detail of acts that she felt were wrongful. She tied those to retaliation. There's no question that she told us the whole story in one interrogatory, gave all the facts. But then in a separate interrogatory, it says, name your adverse employment actions, and she lists, what, three? How can the district judge abuse his discretion to say I'm holding it to your three? Right. So these were contention interrogatories, correct? These are what? Where contention interrogatories. So under Civil Rule 33, there are the idea that you can ask people, you can ask a defendant or opposing party to apply law to facts. Now, this is something that wasn't done normally until 1970, until the 1970 revisions to the Civil Rules, and there was concern about that, bringing back a bill of particulars. But when it boils down to, here's what I see, here are all the bad things that happened to me. Right. Answer number one. A lot of bad things can happen that don't result in any employment action. They just, you know, maybe there's harassment. There's, you know, various aspects. But then you say, well, now tell me what were not just the bad things that happened to you, but what did your employer do that adversely affected you? Right. And that's a different question. I mean, that's really saying, okay, now tell us, you've got all these bad things that happened to you, which she was quite extensive about and careful. But heading on statute, what happened? You know, you could have a lot of bad things happen to you, and there may be no legal consequence. Or, you know, you don't have to precisely get the legal consequence, but you have to say, you know, I was fired, I was demoted, I was moved over here, you know, people wouldn't eat lunch, whatever. What were the adverse, by the employer, consequences? And, you know, at some point you've kind of got to put your money on the table, don't you, on that point? Right. But, again, first of all, you mentioned the term harassment. Now, that was already part of the hostile work environment. So right there, the defendant is on notice that we consider all of these acts to constitute the severe and pervasive series of acts that constitute a hostile work environment. So if she was wrong in not putting and not knowing, and let me just point out here that they asked Ms. Rispoli to use the dictionary in answering those questions. But isn't it also true that interrogatory number two then says, with respect to each wrongful act, please set forth the legal basis by which you claim such act was unlawful, which is responsive to Judge McKeown's concern. And then you said, with respect to claim one of the complaint, you listed which of the paragraphs, and you said, she engaged in discrimination and violation of civil rights by retaliating for being a witness. So you said precisely which of the paragraphs were relevant, made up the cause of action for retaliation, and similarly with regard later on to harassment. So it's kind of redundant. Well, we're asking. In other words, it wasn't just a list of things. It was a list of things which later was looked up to particular causes of action. Right. And that was in the interrogatory number two. I believe those were mixed in with interrogatory number one, and it was stated to that effect. So they were on notice that we considered these acts to relate to retaliation or to relate to hostile work environment or to relate to disability. Now I want to point out that in the motion for summary judgment, the defense said that Ms. Rispoli was alleging the facts in her complaint and also the same facts that apply to the disability claim and the facts that apply to her retaliation claim as the facts for her hostile work environment claim. How did this play out in the trial in a way that mattered? Well, this is the big concern I have, and it started with the opening statement where the defense says that these are chippy performance reports, that she's not going to be disciplined for these, that these don't even constitute discipline, that even if they do, there's no adverse consequences. She still has her job. This was not our case, Your Honor. Our case was about a long series of events, which began right after her base chief bill verdict in 1999. But that doesn't, getting more precisely, of course the defense always says that. They say these are like inconsequential, they don't matter. I mean, that's their characterization. The real question is, at trial, what were you permitted to argue? We were permitted, as the defense pointed out in their response, we were permitted to point out some of the aspects of the events that we were concerned about, but not all of them. And to me, it was like the judge took out the core, the most important parts from our aspect. For example, the fact that she had been terminated in 2000 after she had reported that she had heard from bill verdict, that she was on a witness list, and there was concern about her. What part of that when he said to you, so basically your claim is retaliation? Well, our claim all along was retaliation, and there were other claims. There was a disability claim, which we eventually dropped by not responding there. But the fact that the disability... What would you say in the end, what claims did you go to trial on? Retaliation. Now, and this is, I guess, part of the confusion. According to Ray V. Henderson, essentially in answering the motion for summary judgment, we responded that a hostile work environment claim is part of the retaliation claim. I mean, it's the adverse employment action. And again, if the defense was not on notice that we were claiming hostile work environment because we didn't list that as an adverse employment action in interrogatory number eight, then they were certainly on notice of it because they filed a motion trying to get summary judgment on the hostile work environment. So there was no question that everybody knew hostile work environment was our claim. But there were four particular issues, as I understand it, that you wanted to... Well, right, and we... ...claim that you weren't able to. It would help me to know which of those actually in the end came in and which of them didn't come in. Okay. Why not, if they didn't come in? Because essentially the judge was at that point making relevancy determinations, right? He said you could bring any of these things in as long as you can make them relevant. Well, that's what I expected going in, Your Honor, was that we were not going to claim these as actionable in terms of recovering damages, but that we were going to be able to bring these in to show causation, to show a pattern. And you were able to bring some of them in. If you go through them, it would be helpful to me. To some extent. I mean, again, if we go to Jose Rosado, who was her shop steward, and in 2003, actually back in 2000, he had a meeting with a base chief named Suzanne Minarich where he witnessed Ms. Minarich saying to Ms. Raspoli, we want you to resign and you're paranoid. Okay? And why did the judge not let that in? Well, that was not... Could I just say briefly, in the end, Judge Peckman said in response to our motion for a new trial that her relevancy rulings or her exclusions of evidence were directly related to the failure, to the alleged failure, and I'd like to talk more about that, the alleged failure to properly answer these interrogatories. So really, I thought that this had, and I still think, that this partial summary judgment order excluding this evidence overrode any individualized relevancy rulings. And even prior to trial, Judge Peckman stated, and you can find this in the record I've submitted, she stated that she was going to apply a strict standard of relevancy. Well, I don't think the relevancy standard should be considered strict. I mean, it should be considered, does it tend to show that discrimination has occurred or that... The remedy for that, then, is if there's abuse of discretion. Right, and that's the second argument. But you were arguing, and then we started for you to try to detail some of the exclusions that you're arresting on, and the first one was Mr. Rosado, but I didn't get your basis for him and whether he was attenuated at that point in terms of who was said what to whom that was in the chain of command. And again, the chain of command was Jim O'Rourke, who is the supervisor at Ryerson Base, who is now the manager of Metro Transit Operations. Jose Rosado, again, testified that she was brought into a meeting, that he attended that meeting. Ms. Raspoli was told by the space chief, who Mr. O'Rourke testified that Ms. Minowich was working under his supervision, had done this investigation that led to her termination, and Jose Rosado was in part of those meetings. And at one of those meetings, Ms. Raspoli was told that she was paranoid and that they wanted her to resign. This could not come in. Now, later on, or actually earlier in the trial, Kenny McCormick had made a similar statement about Troublemaker, that he had witnessed another base chief, who wasn't necessarily in the chain of command for these particular performance reports, because once we were limited to these particular performance reports, the judge wanted to see each decision maker. But he was a base chief under the base supervisor, Jim O'Rourke. Now, Kenny McCormick testified that he witnessed Mr. Keyport, the base chief, say to Ms. Raspoli that she's a troublemaker. And because Mr. McCormick's statement in his declaration was that he heard that the perception of her was that she was a troublemaker, the judge allowed that in because it was not related to that particular discipline, but it was a general perception at the base. So she thought that that was allowable. But why, then, was not Jose Rosado's statement? I mean, that we want you to resign. I mean, this is her working under Jim O'Rourke, who at one point Judge Beckman mistakenly called Mr. Ryerson, but there was some truth in that. He's the supervisor of the base. And once he makes a decision back in 2000 to terminate her, that he wants her to go to a psychological evaluation, that she has all these complaints against her, which he's not disclosing to her union member, once he makes that kind of decision, this stays in the file. These perceptions remain. So back to Mr. Rosado's excluded statement that we want you to resign, I mean, that is a pervasive view that we want you out of here, and that should have come in because these performance reports. Should have come in. With that regard, I mean, does it make any difference to your ultimate case likelihood of prevailing, whether it comes in as evidence of the retaliatory motive for the adverse actions that the judge did allow to be tried, or whether it comes in as a separate adverse action by itself? Does that make any difference? I understand it didn't come in, but if it did come in, if it had come in. I think it does make a difference. Why? Because I think if you're asking the jury to consider whether this particular performance report was justified. Well, it couldn't have come in as an adverse action anyway because there wouldn't have been time for it, right? Well, I don't think so under the hostile work environment theory, which we were talking about. You know, we're talking about a pattern of. . . Well, it could have come in as part of a pattern, but that's the same thing as saying it comes in as essentially the motive for something else. It seems to me to be quite fungible. But it could have come in itself as an adverse action. But it didn't come in. I understand that, but I'm trying. So that's one thing that didn't come in. Okay, and the other thing that didn't come in was Elaine Olson, who was the training chief. In 2002, Ms. Respoli started having troubles with reading on the bus and calling out these stops. And she submitted a report, a psychologist report. She eventually complained of retaliation. In early 2003, there was this investigation. Ms. Olson was a training chief under the training supervisor, and she trained Ms. Respoli. Now, later on, and at trial or in her offer of proof because it didn't get to the jury, Ms. Olson testified that she was told specifically, in the context of why she didn't get a promotion, it was because she had championed people like Karen Respoli. Now, Ms. Respoli. Well, that certainly wouldn't be an adverse employment action, but it could be evidence of a motive, right? Right, and that was an example, a very important example, which I focused on in the brief, of something that was excluded. But that seems to have nothing to do with the adverse employment action problem. Well, again, I'm making two arguments that the adverse employment action, I do believe that it had a pervasive and overriding effect because the judge was making rulings based on, for example. I'm trying to see how that one had anything to do with the adverse employment action. I mean, that statement was not made to her, and it wasn't in her file. It was a statement made to somebody else, which would be evidence of motive, but it wasn't an adverse employment action in any theory. Well, remember, we're talking about Ms. Respoli being under surveillance. Ms. Respoli supposedly having a lot of complaints against her. This surveillance resulting in increased discipline. Judge Lasnik's order talked about scrutiny, and Judge Peckman talked about this prior to trial, about scrutiny possibly being an adverse employment action. But this doesn't relate to adverse employment action vis-a-vis your client, and you don't have some decision maker involved. Well, no, because you have the training supervisor in response to supposed problems with Ms. Respoli's customer service training her, and then being told that she didn't get a promotion because she helped Ms. Respoli. Well, the idea, the pretext at least, was that they were trying to help Ms. Respoli to do better customer service. And again, if you see the investigator's report, she did not have problems with customer service. She had glowing auditor's reports. Thank you very much, Mr. Benwick, for your time. And I will have rebuttal. Well, actually, you used it up, but we'll give you a minute in rebuttal. Thank you. Good morning, Your Honor. Steven Tepley on behalf of King County. You speak up a bit. Yes. Steven Tepley on behalf of King County. With me is John Zeldin-Rust, who will address any questions related to the breach of contract claim. Your Honor, an abuse of discretion standard is the standard to be applied to all of the claims brought by appellant in this case. The dismissal of claims at summary judgment, the abandonment of claims at summary judgment, and the evidentiary rulings of the court. Your Honor, what happened here is that whether by design or by inexperience, plaintiffs during the course of discovery at summary judgment and post-summary judgment simply failed to provide defendants with notice of its legal theories and the factual basis. I'm really having a hard time with that because they gave you a long list of things that were wrong. In interrogatory two, they said, with respect to each wrongful act, set forth the legal basis, and then they said by the acts listed in paragraph so-and-so and so-and-so, defendant Metro has engaged in discrimination and violation of civil rights of the plaintiff by retaliating for being witnessed in violation of da-da-da-do. Isn't that an ordinary answer to a contention in interrogatory, which is quite, I mean, probably much more than you usually get and quite sufficient? I disagree, Your Honor. Why? For two reasons. First, if you look at the 127 paragraphs that are set forth in answer to interrogatory number one, it is a rambling list of things that occurred, some of which occurred at Metro's doing, some of which did not. If, for example... So they're rules, but that's not the question. The question is if they put you on notice of their claim. Well, they didn't put King County on notice of their claim. They simply put King County on notice of alleged facts, which they believed that they could prove. However... And which they say were discrimination and violation of civil rights of the plaintiff by retaliating for being a witness in violation of such-and-such and such-and-such. And if perhaps King County had not asked interrogatory number eight, had not asked them to identify their adverse employment actions, then perhaps Judge Lasnik's ruling would be error. If, however, King County had not asked interrogatory eight, we wouldn't be here, because King County would be stuck with the case that it had based on the questions it asked. Also, I'd like to know how you were prejudiced in any way, having this whole list and knowing that these things were said to be discrimination. You had to deal with them anyway. What difference did it make whether you dealt with them as an adverse employment action or something else, in terms of discovery? What difference did it make? I'll tell you what difference that it makes. Ms. Rispoli's 127 paragraphs constitutes acts over approximately a 10-year time period, and it relates to all of her eight causes of action. And she said that's her cause of action, so you have to deal with them quite aside from the adverse employment action problem. I understand, but as we prepare for trial, we're strategizing as to each cause of action, how we're going to prepare, which witnesses are we going to talk to, which documents do we need to obtain, which metro managers do we need to interview and or provide for deposition, which of those metros... First of all, you certainly knew by the point of summary judgment that... We did not know until the reply brief. Okay, okay. Excuse me, the response brief. All right, but I want to know how it prejudiced you. Well, we had filed a summary judgment based on a claim, essentially based on plaintiff's answer to interrogatory number eight, in which he identified 13 adverse employment actions. We prepared our summary judgment arguments based on that, and then for the first time in response brief, King County learns that, in fact, he's not simply relying on 13 adverse employment actions, but he's relying on these four claims that, although set forth in general terms in answer to interrogatory number one, certainly were never identified as adverse employment actions. But you certainly knew that... Was Discovery closed at that point? Yes, it was. Discovery was closed, and the deadline for filing summary judgment had passed. The point that I'm making is that with regard to... The question I have is with regard to Discovery, I don't understand what difference it makes if these allegations are in interrogatory one or interrogatory eight. There are still allegations that you still have to deal with in Discovery. Potentially, yes. However, in strategizing our case, we had 13 adverse employment actions. How does that affect Discovery? Because those were simply... We were in the process of trying to establish whether or not there was any retaliatory intent in acting in those 13 instances. And if you didn't relate Discovery as to the 127 things, you're going to be at potential risk, no? Well, I would disagree with that, because if you look at the 127 paragraphs closely, quite frankly, much of what's contained in there makes absolutely no sense. I'll note, for example... So you don't have to deal with them, but that doesn't have anything to do with whether there were allegations of adverse employment actions or not. I just don't see how it affected the Discovery at all. Well, it affected the Discovery in the sense that if King County is going to prepare to respond to the adverse employment actions and address what was the intent of the decision makers when they actually engaged in those adverse employment actions versus trying to cull through this 127 paragraphs... Which you had to do anyway, because it was alleged anyway, and it was alleged as part of a harassment cause of action, which wasn't dropped to the point until you got to summary judgment, so you had to do it anyway. Well, I would disagree with that. But the fact of the matter is that it was impossible to go through this 127 paragraphs and cull out what specifically it was plaintiff was alleging was an adverse employment action. I'll note for the record that if you look at these 127 paragraphs, many of them describe conduct that Ms. Raspoli engaged in. Many of them describe conducts that passengers engaged in. You know, I guess the point is this. The contention rogue number 8 was asked, and as such, defendants were entitled to rely on it. And we did rely on it. And Judge Lasnik, in his ruling, determined that we had relied on it. And Judge Lasnik did not abuse his discretion in making that determination. What about the evidentiary rulings that Mr. Van Winkle was objecting to? I'm sorry? Let me ask you about the evidentiary rulings, the relevancy rulings, that Mr. Van Winkle spoke about. Judge Peckman made it absolutely clear that Mr. Van Winkle was able to produce any evidence that was relevant to the adverse employment actions that were at issue. She made it clear to him that he would be allowed to offer evidence of the dismissed causes of action so long as he could establish their relevance. She made it clear to him that he would be allowed to offer evidence regarding Jim O'Rourke, regarding Curtis Robinson, and regarding Suzanne Minarek if she could establish that it was relevant to the decision-makers. So it would be helpful to me to know what was and was not allowed in of the things that would have been, of the four things that he tried to make as adverse employment actions and wasn't allowed to. What are we really talking about in terms of how weak the facts didn't come in because of this? Very well. The adverse employment actions at issue, which the judge indicated the plaintiff would not be allowed to rely on, were set forth in the court's summary judgment order. The plaintiff would not be permitted to base her retaliation claim on the alleged attacks on her mental health. It came in. Ms. Raspoli and others were allowed to testify about any statements that Mr. O'Rourke made attacking her mental health. Her request for accommodation under the Americans with Disabilities Act was also one of the bases, one of the facts that Judge Lasnik excluded at summary judgment, and Ms. Raspoli was allowed to testify about it. The false attribution and embellishment of customer complaints, Ms. Raspoli was allowed to testify about that. The failure to protect and the sham investigation, also evidence regarding each of those came in at trial. They were not allowed, they were not actionable causes of action under the court's ruling, but the evidence regarding them came in at trial. So excluded was what, Jose? There were some evidentiary issues that were independent of the adverse employment actions, and I think that's important. What was excluded? What was excluded was a statement by Suzanne Minarek, testified to by Jose Rosado, that she, Ms. Minarek, wanted Raspoli out of there. And why was that excluded? Because the plaintiff was unable to establish any connection between Ms. Minarek and the decision makers of the adverse employment actions at issue in the case. What else was excluded? The testimony that Jim O'Rourke had fired Ms. Raspoli and returned her back in, I believe it was 2000. And again, the reason being, the court's decision was based on Mr. Van Winkle's inability to establish a nexus between Jim O'Rourke's decision and the decision makers at issue. But that was not one of the things that she claimed to be an adverse employment action. No. And I think it's important for the court to recognize that Mr. Van Winkle's arguments regarding what evidence came in and didn't come in at trial is very separate and distinct from his arguments about what adverse employment actions Judge Lasnik allowed him to offer and allowed him to pursue as actionable. It is, they're two very different, very separate arguments. He brought up a third point about Ms. Olsen, basically that she said that the implication because she was disappointed was that she wasn't really supposed to help Ms. Raspoli. Yes. Is that relevant to this whole weeding issue and whether they are singling her out, meaning Ms. Raspoli, as opposed to somebody else for her? Yes. The evidence at trial was that Ms. Olsen said that in a meeting with Curtis Robinson, Mr. Robinson said, and Ms. Olsen testified that it was said in a joking manner that it was because you helped people like Ms. Raspoli that you didn't get this position, whatever it was. Judge Peckman allowed plaintiff to establish how that was relevant to the decision maker's intent, and he was unable to do so. He was unable to connect the statement by Curtis Robinson with any of the decision makers. But Curtis Robinson wasn't one of the decision makers. Was not one of the decision makers. There was no evidence that he was tied in. Wasn't one of the decision makers with regard to any of the other adverse actions which didn't come in as adverse actions? I'm sorry, I didn't understand. Would he have been a decision maker with regard to any of the adverse actions that didn't come in? No. There was no evidence that Curtis Robinson was involved in any way, shape, or form with any of the other decision makers. So your position is just wouldn't come in under any scenario. It doesn't matter. No. Even if Judge Lasnik had not excluded those facts for purposes of actionable causes of action, Curtis Robinson's statement would not have been relevant. It was simply unrelated. Thank you very much. Thank you. Mr. VanWinkle, as I said, you used up your time, but we'll give you a minute. Thank you. The Ninth Circuit has said that discrimination is a very elusive question. When we talk about Mr. Robinson not being a decision maker, he's in the chain of command. He's Mr. O'Rourke's boss, who is the boss of Ryerson Base. We're talking about a corporate environment. There is a relation. Now, in terms of their entitlement to rely on answers in interrogatories, the law in the Ninth Circuit, under Donovan and Victory Characters, is they're not entitled to rely on unchanging answers. And I again say that Ms. Raspoi did not make a mistake in her reply because they asked her to apply the dictionary definition and not case law. And I think if you carefully read the briefings, the summary judgment briefings, you'll see that they were not prejudiced at all, that they were fully aware that they put a lot of the same evidence in that we were talking. They put in the investigative report. They put in the psychological evaluations, and they gave contradictory answers. And I think I've pointed that out very well. Were there depositions in this case? I'm sorry? Were there depositions? There were a lot of depositions. The investigator was deposed. The human resources person that was involved. Many of the people were deposed. And in response to that argument, they were going to have to go out and depose all these people. These were people that were their employees. And were the questions asked basically relevant to the rest of 127 things? And I pointed that out in my motion for reconsideration. I pointed out very specifically how these things that were excluded were all specifically asked about by the defendant. I briefly want to say on the contract claim, we proved a pure issue of law that there is no contract claim filing requirement. I've submitted a recent case, which basically supports the arguments in my brief at real estate in the office. Thank you very much. Thank you, Mr. Kepley. Thank you. We're going to recess.
judges: Silverman, McKeown, Berzon